May it please the Court, I'm Donna Elm and I'm representing Rodolfo Garcia in this matter. I would like to reserve seven minutes if I could. It is important to start with recognizing the extent of the prior bad act evidence that we have in this case. Could you speak up just a little bit? Certainly. I'm not sure I understand the distinction with Cinegini. The what? I am not sure that I understand the distinction between prior bad acts in this case and prior bad acts in Cinegini. The prior bad acts in Cinegini was in the Mann Act case, Mann Act prosecution, not a sex case, in which there was raping and beating of the girls to try to keep them in line. So that was part of the threat was that you would be sexually assaulted or beaten. The difference between that case and this case is that we now have, and of course that case happened in 1991 or 92 when, I think it happened in 1992 and we have 414 come in, I think in 1992 or 93. 414, evidence rule 414 says that in a child molestation case, in a sex case, then you go to these other purposes and you look at these other things. And that would, I think, supersede, plus we also have Cinegini, it's not a child molestation case. And it's not even a rape case, it is a Mann Act case. Nonetheless, I have conceded that Cinegini applies as to the physical hitting that was alleged. My problem with Cinegini and how it was applied in this case is that we have so many repeated instances that you start getting a prejudicial amount when they keep talking about it. It needs to be said once as to each of the girls, the two victims. How many total bad acts were admitted? I guess the question should be were properly admitted. There's quite a number. I counted six. Is that about right? And that's why I wanted to go through that because there's actually quite a few more. If you look at them, when I did my brief, unfortunately, I listed the ones that were not litigated, but I didn't list the ones that were litigated and were admitted and that I contend were improperly admitted. So we have with Samantha, who had the one count of molestation. There were three young girls who testified. Correct. And a total of six prior bad acts that came in. No, quite a few more. That's why I was going to explain this. What we have is in that we had the touching of the breast, which was the charged offense, but we also have the putting on of clothing, being pushed down and sat on top of on bed, which is like a kidnap. Big deal with the clothing. I didn't understand that. My thought was when there are a bunch of kids, people often ask kids to try on other kids' clothing to see if they can avoid buying new clothes because the old clothes will fit. It's what you do if you have multiple kids and not that much money. Why was it prejudicial? Why did it matter? I don't get it. The clothing was important because it was being used by the government to suggest that this was a sexual thing, especially when we have – It was boys' clothes on a girl, right? A girl's clothes that were too small. And what they said is that Stephanie said that he had her put on these clothes and so did the other girl and had him walk around and he would stare at her was the testimony that came in. He would stare at her and then he took her back to the bedroom and that's when we have this allegation of something sexual and physical going on. That's what I misunderstood. I was thinking when we have little kids, sometimes we have them put on Big Brother's clothes and see if they fit, which would involve looking at the kid. Yeah. And, in fact, there were a lot of kids here, but this is about a much younger child's clothes being put on it. And so the allegation is that he's got skin-tight clothes so he can see her form. It's a little hard to argue prejudice, isn't it, when in a case like this the jury acquitted on one count? It is hard to argue prejudice as to the acquittal on the one count with Samantha. Nonetheless, if you look at how the government is arguing, we have all of this mountain of evidence coming in and you have the blending of all three and the argument of all three girls this, all three girls that. You would think, though, that if a jury couldn't discern among and between the counts and among and between the witnesses' testimony, they simply would have convicted across the board, yet they didn't. Well, you would think that, except that there was a great deal more evidence to prove what was going on with Samantha in this case and why she was, why she and then Stephanie would not be as trustworthy. We had far less there. But if I can go back here, we have a number of other things. We have the addition, we have bringing in the why do you think I want to rape you, and that the court had said you can't bring in without talking to the court first and asking, just brought right in, followed by the forgive me, fuck me, which wasn't litigated. We have the fondling of Samantha's breast or attempt to in Halloween. We have threats not to tell was it was admitted, but what was brought in was if you tell, I'll break your legs and leave you in the desert, this is the first time it ever came out or was ever said. And we found out later on page 404 in my index that the prosecutor knew about that ahead of time. The generic hitting, what you referred to as generic hitting came in. So what if that's the first time it came out? That should be litigated. Something that damaging should be litigated to try and determine what it is, when it was said. Both sides always get unpleasant surprises during the testimony. I couldn't understand what the problem was actually. One of the problems with it, and forgive me, one of the problems with this case is that we had so many surprises coming up. At one point the judge turned to the prosecutor and said after each time the prosecutor came back and, oh, well, there's new allegations, oh, well, there's new allegations every time we went in. That happens in criminal cases. It's not like civil where you can discover it to death under rules 26 through 37. Well, we can't discover it, but the prosecution has an obligation to try and find out what its evidence is. And this is what the judge told the prosecutor. Look, I can understand a Jenks Act challenge and I can understand a Brady challenge, but I can't understand a challenge, I didn't know this was coming. And so I'm asking you, what is the challenge exactly? The challenge is that this was not litigated ahead of time. This was not clarified. The prosecutor actually came on in and said all we have is generic threats that, you know, don't tell or else you'll get in trouble. Can you identify a prior bad act that came in that wasn't covered by the pretrial testimony that the judge actually, you had a motion in limine of some kind. Yes. The judge Merguia dealt with a number of issues, but my understanding is a couple, maybe more than two, but several popped up during the trial. My reading of the record was that she excluded that evidence, admonished the jury not to consider it, and the trial moved on. Is that right? That is correct. What we have is several things. One is the first time we hear about touching the breast of Stephanie. That was excluded. I asked for a mistrial. It was not granted. The we also had the instance of. Excuse me. We normally assume that when something like that happens in a trial, when an issue pops up and it shouldn't be there and the judge immediately says that's out of the record, turns to the jury and says you're to disregard this, our case law says we assume that the jury understood that instruction and followed it and didn't consider that evidence. Isn't that right? That is the case. The reference to after why did you always think I'm going to at trial was fuck you, then the fuck me was objected to and the court did not strike. And so that went on into the jury. And that's very prejudicial. But why is it inadmissible? It's inadmissible because we did not litigate it in advance. But there isn't any rule that says evidence is limited to what was litigated in advance. No, there is no rule. That's why, however, we have limine motions, why we have that sort of litigation pretrial, why you're supposed to give some notice of 404. No, it isn't. The reason for in limine motions is so that to the extent counsel can anticipate evidence that may raise legal questions, the questions can be answered without lengthy interruptions that would make it difficult for the jury to follow the evidence. But many or most evidentiary issues are decided as they come during trial. And even in limine motions, orders are often changed during trial because context changes. Do you understand what I'm missing? I just, accepting what you say about the prejudice, the surprise, and the failure to litigate it before the trial started, I still don't see what legal principle is violated. The legal principles that were violated then, let me get to that, because what we have is all of these things, the things that were admitted and the things that I contend were admitted improperly, all come in under, as the judge ruled, 404B with the whole litany of laundry list reasons why, and then 411. The problem with the 404B is that it was meant to be brought in for any of these number of different things, but when you look at some of the closing argument, it was never argued for that. It was argued instead as propensity evidence that what she said is these children were molested and abused over a period of time. They were molested repeatedly. What she started out her rebuttal argument was, the opening salvo was, and this is on the government's attachment at 24, this is a case about that man physically and sexually abusing Samantha Stephanie with no charged acts, only bad acts, and Yesenia. So what we have is not it being used for a proper purpose, but it being used for an improper purpose. The judge, Murgia, in connection with the Illuminate proceedings, tell the prosecution that it had to bring up that she wanted to consider every potential prior bad act prior to trial? Judge Murgia did not specify that. There were a number of the acts that she did ask to have the prosecutor post. But this is not a case where the district court said we're going to have a hearing, the government has to bring up all of its known prior bad act testimony, and if it clears, it's going in. If it doesn't, it's not coming in. That didn't happen, did it? I think that that's a fair way to characterize it, Judge Hawkins. It did not happen that way. Let me ask you this. Did you have the benefit of an investigative report? We did have investigative reports which were attached in the excerpts. Okay. And were there any reference to these prior bad acts in the investigative report? There are references to the bad acts that were litigated. It is the bad acts that were not litigated that came out at trial. The litigated, you mean the ones that were charged? No. No, the ones that came up in the motion? The ones that came in. You mean the ones that you knew about and argued about before the trial started? Correct. It doesn't seem like litigation to me, but okay. Sorry. So you knew about some of them, but all of them were not there in the report. That is correct. And, in fact, some of them were denied in the reports and then were brought in, for instance, touching Stephanie's breast. She denied, repeatedly denied. I'm thinking. No, not just repeatedly denied. Can you finish your sentence? I'm sorry. You said touching Stephanie's breast. They were repeatedly denied. Was that the total answer to my question? Touching Stephanie's breast was repeatedly denied beforehand. Touching Stephanie's privates between her legs was denied beforehand. Denied by Stephanie? Yes, in numerous places in the investigation. Nonetheless, those were brought out that way. That seems like a gift to the defense because it sets the complaining witness up for cross-examination. Well, you denied this to the policeman or to Dr. So-and-so, but here you're saying the opposite of what you said then. Gifts cut two ways, Judge. And while it does give me the opportunity to say, well, you're bringing up things later, we meanwhile have more and more of an accumulation of bad acts being brought on in. In the absence of something like what Judge Hawkins described, in order by the judge saying either the bad act, either the prior bad act is advised upon and ruled upon pretrial or it doesn't come in. In the absence of that, it strikes me as totally unobjectionable, provided that it wasn't litigated in advance, provided that it doesn't otherwise fall afoul of the rules of evidence. I'm thinking, suppose intersection collision. No skid marks described in the police report. Policeman testifies on the witness stand there were skid marks. It says how long they were and that that shows that somebody was speeding across the center line or something. My thought was always there's no evidentiary objection. If there is an objection, it's going to be overruled and the policeman can be cross-examined. Well, how can you remember that now since it wasn't in your police report? Why is this different? What am I missing? This is different for several reasons. I know my time's passed, but I want to answer your question. And that is, first of all, it's not a skid mark. It is a child molestation incident. More serious case, more prejudicial evidence. Obviously. Principles are the same. And Rule 414, which is really critical. Rule 414 has a number of prerequisites. And if you look at the LeMay case, it says the fifth prerequisite, there's problems with similarity, that they have to be very similar. If you look at the stomach bouncing incident on Stephanie, if you look at the laying by her and reaching between her legs with Stephanie, and if you look at the watching pornography with Yesenia, none of those are like, first of all, like the other charged acts. So they don't meet that LeMay issue. Second of all, what we also have is that under 414, the fifth element of LeMay is that it is the necessity of evidence beyond the testimony already admissible. What is the necessity of all these things? And there is no good necessity. We also have the problem of did these happen? How do we know these happened? Without a standard of proof, of course, we have a great deal more difficulty. The standard of proof issue, and I know that since January you've hardly heard that without the word booker in the same sentence, but the standard of proof issue that we have here and that I brought up is that what we have is not prior instances, prior offenses, but same time, same persons, very weak evidence on either side, just these allegations of the girls. And other allegations being used to bootstrap each other. If it's the same person, same offense, rather than a prior one, then you don't have satisfaction of the word another in 414A. Correct. They should not have been admitted. Well, if you don't have another in 414A, then the disclosure requirement of 414B wouldn't apply. The another act, these are the same victims, but these acts that I'm talking about are happening at different times over about a one-year period. So they aren't all happening necessarily at the same time. It's not that all these things happen one day. Here this happened, here this happened, here this happened, here's the charged offense, here this happened. Some of them are not even prior. Some of them are subsequent, and the priorness I think matters a lot in this. But in any event, the 414 issue for LeMay is the necessity of this evidence. What is our necessity? When we get to the standard of proof, and I think that is the more interesting issue for this, is should there be some sort of standard of proof other than just the implied Huddleston standard, which was imposed in this case, or the 403, is this too prejudicial, which is suggested in LeMay as a way to try and fix the Hadley problem. What we have is a number of bad acts with very little proof other than these girls all saying them, these girls who had been together all saying them at around the same time. We have on the 414, we have the problem of after Booker and Amaline 3, there is relevant conduct that could come on in. Under the Howard line of cases, there's exceptions for clear and convincing and beyond a reasonable doubt. Those standards may be necessary to satisfy that evidence coming in just in terms of Booker and Amaline 3. Standards that we don't have set yet. Nonetheless, 404B is not propensity evidence, expressly not propensity, whereas 414 is. Well, I think we understand your argument. You're over time. We'll give you a little time for rebuttal. Thank you so much. Sure. Good morning. May it please the Court. Linda Boone on behalf of the United States. The defendant's argument is essentially that too much evidence came in against him and that he was prejudiced by that evidence, not that it was false and not that the witnesses lied. Was he prejudiced? Yes, you bet he was. But the question was, was he unfairly prejudiced? This is very dangerous testimony, especially in a case like this involving allegations of child molestation. The danger which is recognized in the rule and recognized in the cases is that the jury will go back in the jury room and say, well, if he did it before, he must have done this, and that's impermissible. And in that circumstance, even though Judge Mergia may not have told the government that she wanted all of it to come out before, wasn't that implicit in what went on with the motion in Lemonade? Shouldn't the government have disclosed everything? No, Your Honor. The district court made a very clear and conscientious ruling in this case. Referring the court to ER pages 231 to 255. Suggesting that she wasn't careful, that she didn't painstakingly go through what was on the plate at the motion in Lemonade. My question is beyond that. Wasn't there an implicit obligation on the part of the government to bring to Judge Mergia's attention prior to trial all of the known prior bad act testimony it wanted to rely upon? The known prior bad act testimony it wanted to rely on, yes, Your Honor. And it's the government's position that that's exactly what the prosecutor attempted to do. Granted, there were some surprises that came up. But Judge Mergia ruled that evidence of physical abuse that could go to the issue of fear, whether or not the victims were afraid to tell, was admissible. And Judge Mergia ruled that evidence of prior acts of a sexual nature that were similar could be admissible on the laundry list. Did the government view those two rulings as an invitation to find and introduce additional acts that would come under those two umbrellas? No, Your Honor. That were not disclosed to the defense? No, Your Honor. And, in fact, as the record reveals, the particular two instances which the defendant objected to, in the brief she listed five specific incidents. But she only objected to two of those. And those were sustained. And those were sustained. And the judge immediately issued a proper admonition to the jury. And under this Court's rulings, that instruction is clearly preferable. I'm sorry. Did the government know about those two instances before the witness brought it out? Your Honor, on the one incident, it appeared that the prosecutor was confused and believed that the information had been ruled on. But on the other incident, it was a clear surprise to the prosecutor, and she even acknowledged on the record that that was a surprise. She did not expect it. You have the incident of the ---- Your opponent mentioned an incident that was allowed in. Was that one of the ones that was not objected to? I'm sorry, Your Honor. I don't remember which. The specific ones that she objected to regarded the testimony on the why don't you like Rodolfo, and that was a surprise. I don't like Rodolfo because my sister was abused. My older sister was abused. That was a surprise to the prosecutor, clearly. Objected to. It was objected to. They did not go any further. And the Court admonished the jury. Why did the prosecutor ask that question? The prosecutor asked the question. So the prosecutor expected the witness to say, because he abused me, of what he did to me, not of what he did to my older sister. And that was, although the defense says that that referred to the defendant's wife, there was absolutely no identification of who that was. Did the prosecutor talk to the witness beforehand? Yes, Your Honor, but that did not come out, the reference to abuse of I don't like Rodolfo because of my older sister. And this Court knows that in a trial, everyone is surprised from time to time at what the witnesses come up with. We never really know what they're going to say, even when we have prepared them for hours and hours. But you could say to them, well, you know, this could be a problem, so before you get into that area, if you're asked a question that you think calls for a response that you do get into these areas, that you better think about it first because we're going to have these problems. I don't know if I make myself clear. There are those of us who just told our witnesses, listen to the question, answer it, tell the truth, and stop. Well, we all tell them to tell the truth. We know that, you know. Yes, of course. We know in this type of case that there's a lot of danger in it. Absolutely. We know that. And we also know from what has happened in the past that there are people who are convicted of these offenses who are entirely innocent. We know that as well. You're shaking your head and saying yes. I'm agreeing. Yes, we do know. But that's not the case. We have to be very careful what we do here. You know, you had the testimony of these girls as to what happened to them, and weren't you sort of pushing your luck by bringing out some of these prior bad acts? No, Your Honor. You know, propensity. No, Your Honor. Propensity is allowed under Rule 414, and the district court had specifically ruled that these prior bad acts were admissible alternatively under Rule 414. But also this Court must remember that of these three child victims, at the time of trial, the oldest was just 15. And at the time of the offenses of which the defendant was convicted, the most serious being sexual intercourse with a 10-year-old child. So we are not talking about adults who can pause before they answer and think and weigh what they're about to say and necessarily follow directions. We are talking about young, nervous children. And the Court is well aware that even seasoned adults, experienced adults, would get nervous on the witness stand under the pressure of such an incident. But we have clearly more than this unsubstantiated innuendo that the defense is trying to argue here on appeal. We had the victim witnesses who testified themselves. This Court has held that if the witness is testifying, that that alone can be sufficient to satisfy the requirements under the decision made by the district court to find that there was sufficient. Kennedy. We're not arguing, no. I don't think anyone should dispute that. But, you know, maybe the government was pushing its luck too far to bring in information that really wasn't necessary to prove its case. Your Honor, the ---- That's a common occurrence. It does happen. However, the government would submit in this case it was necessary, and the district court found that it was necessary specifically because you had child victims. And as this Court has held, when you have child victims with limited cooperation that 404B evidence can be necessary to help make ---- allow the jury to make that decision regarding their credibility. I don't believe that ---- Could you help a little bit on the interaction here between ---- Am I ---- Help me on the interaction between 404 and 414. Certainly, Your Honor. As I understand it, the judge said I don't have to decide burden of proof under 414 because I'm letting it in under 404. There are still some 414 disclosure deadlines. I'm a little confused about how to put it all together. Okay. First, Your Honor, that's not exactly what the court said. The district court said I am admitting the prior bad acts under 404B and those acts of a sexual nature I am alternatively admitting also under Rule 414. So there was a distinction, and that was clarified to the defendant at the end of the second hearing on the motions. And the physical acts of physical abuse, the district court specifically distinguished and said it was admitting only subject to 404B, Your Honor. So does that answer the question, clarify? Now, under ---- for the prior sexual bad acts ---- Yes, Your Honor. What's controlled by that 15-day deadline in 414, and what isn't? Your Honor, all of the prior acts which the government wished to use were submitted to the court and to the defense in writing in a timely fashion. The government did not violate any of the rules for 414. I understand that all that the government intended to use were disclosed 15 days in advance. Yes, Your Honor. But as we all know, and as you've said, you get some surprises. Yes, Your Honor. And there, Your Honor ---- What are we supposed to do about the surprises? Those surprises still fell under the rulings made by the district court. There was no violation of the rulings. So, therefore, the government would submit that those surprise incidents which came in, which were not ---- if error and were not struck, fell under the court's rulings that they were admissible under 404B for those items of a sexual nature and those items of physical abuse. If they had arisen prior to the trial, they would have been admissible under the court's prior rulings, Your Honor. So if I understand this right, the surprises come in under 404? Yes, Your Honor. That is correct. If they had arisen prior to the trial, they would have been admissible under the court's ---- the district court's rulings. They would have fell under those ---- Why wouldn't the judge, since they were sexual, have to tell the jury when he hears a new one, disregard that? Well, Your Honor, the court did in specific incidents. As I was referring earlier, there were five instances that the defendant raises on appeal. Three of those incidents, there was no objection. Two, there was an objection and cautionary instructions were immediately given to the jury and they were struck from the record. And this Court held under Escalante that the cautionary instruction is the preferred alternative to declaring a mistrial. And the defendant argued that the statement by Stephanie that her breasts were touched ---- So what you're saying is wherever there was a surprise and it was sex and it wasn't disclosed 15 days in advance and the defendant objected at trial, the judge struck it and told the jury to disregard it. That is correct, Your Honor. Okay. That's correct. Does the Court have any other questions on 414? If not, I'll just mention that it's the government's position that the vouching incident, the claimed vouching didn't amount to vouching. We've got all that well in hand. Thank you, Your Honor. The government would submit that clearly under this Court's most recent interpretation of Ammaline that this case is appropriate to be sent back for remand on the sentencing issues, but that the defendant's conviction should be affirmed. Thank you, Your Honor. I'll make this very quick. There were five incidents listed, but that's why I said before I wanted to just mention. There were six that were litigated pretrial to which, in effect, is the same as me objecting, and that were brought in, which was the Halloween attempt to fondle breasts incident, the threats about breaking legs, watching pornography, and every single thing out of Stephanie's mouth was introduced for other bad act purposes, all four or five things. The second thing I wanted to mention is the district court did not find necessity. Necessity is a critical issue in LeMay. The district court never once said or considered necessity, and I brought up LeMay in my pleadings. The reason why you let in prior bad acts when there's only a child say so is because you have some certainty that that prior molestation occurred. What we have when we're just doing all these allegations coming up all in a little period of time from the same people is taking an unsubstantiated claim and another unsubstantiated claim and putting them together, and that doesn't make it more substantiated. But that's how the jury was taking it, and that's how it was argued. They're repeatedly being molested. And finally, I do note that although the children were getting nervous and came out with unexpected things time after time after time, those things were very prejudicial. For some reason, that's how it kept always coming out. Thank you. Thank you. That matter will stand submitted. Next item, U.S. v. Ariza Sotomayor.
judges: Pregerson, Kleinfeld, Hawkins